A lot of people are interested in that case. I think there's probably a lot of states there. Nearly every state has one of these contracts. I will be very brief. I think briefs are self-explanatory and I don't want to repeat what's in the briefs. There are just two things I'd like to talk about that aren't discussed in detail in the brief but are in evidence in the appendix. In particular, just one thing, the prior art, the single piece of prior art that the patent office cites, which is my client's own patent, which is a chest press machine. I'm assuming that the court... Is the only difference between this and the prior art the difference between pushing and pulling? No, no they're not. The key feature is still the linear motion, correct? It's two things, well several things. And the claim, the primary claim, the broadest claim I think sets out six or seven very specific things. One, and you touched on one, that it moves in a substantially linear path. But that's not inconsistent with slightly curvilinear. Those are not inconsistent. Substantially linear does permit slightly curvilinear. I would think that's a weak point and that the pulling and the pushing which Judge Rader raised is the key issue. Your Honor, I'm not going to dispute that the language is so close that someone could argue that they're similar. But if you back up and take a global view of this, the art that they're citing is against a rowing machine, is a chest press machine, and the assumption in this is that you can use the art... Those are preambles, right? I'm sorry? Those are preambles. Are those governing or are we to focus on the remaining operative parts of it? I would abbreviate the claim in its entirety. And the claim in its entirety calls for an apparatus that has an assembly, that has a handle that moves or can be moved in a substantially linear path in a rowing motion, taking a handle from a first position to a second position in a rowing motion. Mr. Oliverio, my colleagues are each going to kick me under the bench here because I'm going to go off the record a little bit. Yes. But I go into my weight room regularly and stick my head up against a machine and convert a pulling motion into a pushing. And I do that on two or three different machines. Have I infringed? No. No, because you're not doing it in a rowing motion. You're not using... Well, I'm now pushing instead of... I'm pushing on a pulling machine or I'm pulling on a pushing machine. Well, I would submit to you, Your Honor, that if you attempted to pull on the machine, my client's own machine that's patented, that they're cited, you would fall over. You can't pull it. They will tell you... That's why I put my head up against the seat. No, you couldn't because you would be like this. No, I turned the other way around. And that's pushing. That's not pulling. You cannot pull on these... And if you look at the figures that we put in our brief, you will see it's literally impossible to pull on this machine in a rowing motion. You can argue something to the effect that the Patent Office, by the way, you just gave an example that the Patent Office has yet to give. The Patent Office hasn't given a single example in any of its... At the board level, at the Patent Office level, and they're not going to give you one here today. But we're dealing with obviousness, and so we're talking about what one of skill in the art might know, and my colleagues are still kicking me under the bench for dropping off the record. I'm listening to the testimony of a cross-examination. You're right. Okay, my legs hurt from being kicked. But still, don't you have a distinct problem here that if push-pull is your only distinction, it is an obvious one. Let's use the legal term. Well, it's only obvious if you redesign the machine. You have to reinvent this chess press machine in order to be able to pull it. And are you saying that the burden is on the Patent Office to show that it would have been obvious? If you've read their papers, do you see a single example, a single explanation as to how you can pull those handles? I submit to you, you try and stand that that machine is standing up with a five-pound weight. These machines have incremental weights. And you're saying it's the machine in the cited prior reference, not the machine that Judge Rader might use? I apologize. Could you repeat that? It's the machine in the prior art reference that you're referring to. That's correct. And they are claiming that that can be used to pull. And I'm telling you, they have not submitted one iota of proof. They just say that you can do it. How? You can't do it. If you stand in that machine and pull, standing up, you're going to go like this. Well, how can they prove it? Do they order a version of the prior art patent device, if it's available, and in your presence try to pull it? They could cite or they could explain and ammend what they're talking about. And they haven't done that. They just said you can do it. I mean, patent office could say anything. They could say that you can fly to the moon. Does that mean you can do it? Well, we did. That's off the record. I mean, that's the fundamental problem. The real problem here is this is my client's own prior art. My client knows how these machines work. My client sent me here to try to tell you, try to explain that that machine cannot be used. Did your client put in an affidavit describing how his own prior art reference cannot be used in accordance with the current claim? That was the one thing I was going to explain, other than what's already in the brief. And I have a fairly comprehensive list here of evidence in the prior art itself, citations. And I'll just very briefly, if you give me 30 seconds, to cite them. You have eight minutes. In ten separate places in the specification of this prior art, it teaches pushing and how to push, exactly how to push. It teaches a seat that's at an angle. It teaches a backrest that's at an angle. It teaches, in 25 separate places, the starting position of those handles relative to the backrest. It teaches the use of a seat or seating in 34 separate places. If that isn't evidence, I don't know what is. How much more evidence do we have to put in? Do we have to put it in an affidavit with my client that just repeats the specification? But that's proof in and of itself. Every figure in this prior art, the handles are here, the seat is here, and if you stand here, or you stand up, or you're sitting, and you try to do it there, asking you to do your like this. And at my age, I would pull the humerus out of my rope paper cup, which I tried to push. And there would be no humor in that. So, the simple point is that it can't be done. And they haven't explained how it can be done. And the specification itself, if you read it, and you're a person skilled in the art, tells you it can't be done. I don't have anything more to say. All right. We'll save the rest of your time, Mr. Oliverio. And Mr. Hamm. I may have put it to court. I think that the thing I want to focus on is the breadth of the claim. You pointed it out earlier. But the claim really has very little structural substance to it. Instead, it's an apparatus claim that requires handles, or a handle portion. It can be pulled by exerting a force in a row of motion. And that's pretty much the point of claim 1, which is the relevant claim in the subpoena. The prior art is admittedly a press machine. This is directed, this is the preamble set. You have to understand. I mean, seriously, a chess press machine? This is the closest part the PTO could come up with? I have to think. In 2003, when this was filed, there had to have been a lot of better stuff out there. Really? This is the art that the examiner cited. And with respect to claim 1, it had all of the elements. Why would you sit in this thing and row, this chess press? One of the findings that the examiner made was that this... You have to sit backwards in it to row? That the user could stand in front of it. Okay. So you're going to use it in a way that it's totally not intended to be used, right? I mean, I assume there's nothing in the reference itself that says, and sometimes you can do it upside down on your head, walking backwards. No. It is novel exercise to do it that way, but there's nothing in the reference that teaches it to be used in a row. Exercise. But the claim is not brought. And why would it have been obvious for someone to use the machine in what, quite frankly, seems to me to be a very unusual fashion, this whole backwards rowing thing. It just seems a bit awkward, to say the least. So why would one of you in the art have read the chess press reference and conclude that it would disclose or make obvious that it's creating a rowing machine that works in the opposite direction? Well, the examiner's finding at this point was that somebody could stand in front of the machine, I think maybe this is what Chief Judge Ray was alluding to earlier, and pull on the handle, as opposed to sitting in the seat and then try to move their hands backwards. It is a much more natural way, if you're going to pull on the handle, to stand in front of it. I think that finding is supported by the structure of the machine. But isn't Judge Moore right? That's hardly a rowing motion. Well, I think what's... You don't row standing up very often. I think that the rowing... You're a gogglier. That's absolutely true. It's a different type of rowing. I think the rowing motion is a pull. The claim says a pulling force is a rowing motion. And I think that the finding that the examiner made was that when you pull on these handles, you can exert a rowing motion. And at that point, what happens, I think it's making up for the preeminent case in this authority, at that point, the applicant will come back with evidence that you can't make that pulling motion, or that pulling motion just can't be accomplished on that particular apparatus. And since it's not a method claim, we're not contending that it would necessarily... that the method of pulling on that machine. Maybe that could be possible. But here's the apparatus itself. As a matter of law, are you making an inherent anticipation argument or a single reference obviousness argument? Well, the board affirmed an obviousness rejection. So this is an obvious... The arguments are based on obviousness. So you're saying the single reference would be modified by the knowledge of one's skill in the art to reach the claim dimension. I think that's right. I think the inherent issue here is that the handles inherently have the capacity to be pulled. And that's illustrated by the fact that it can be pushed. It's a finding that it's not surprising, it wouldn't be surprising that if you can pull something, if you can push it, you can pull it in the same, across the same path, the path of time on the exercise machine. The language, the row exercise machine, is that meaningful language or is it simply preamble statement of purpose? I think it's just a preamble statement of purpose. And so it's just... I don't think that putting the claim in any other way. I think putting the claim comes out to be comprising. And I don't think that it's a preamble statement of purpose. This is just the same type of situation where you can't use an intended use to distinguish prior or after events. So that's where we are with this claim. Assuming the language without the preamble is anticipated or rendered obvious by the reference. That's correct. That's correct. And I think the examiner did point out the reference doesn't have these elements. This claim only is just one of five points. This claim only is very broad. And the examiner didn't make five of those points. He pointed to one of those five points. He didn't try to make a shape along here. And one must have a substantially linear path that was understood out of field. Well, it wasn't a brief. He just didn't choose to argue. But it does, as you pointed out,  The key is the linear part. The slightly modified curved part. The fact that there's a linear part that doesn't change the linear path. Any other questions? Thank you, Mr. Helm. Mr. Oliverio. Your Honor, I apologize. It takes a few minutes. On the question of obviousness, you're correct. That was a rejection. But let me just say, the argument that this is a very general claim, just because it's a general claim in general language, which it isn't, by the way, and I'm happy to read this claim in language if you like. But let's assume it is. Let's say it's a general. There's no rule or regulation of law that I know of that says that a patent claim is invalid because it's in general language. It's entitled to general language if it's new and unobvious. Now the question is, is it obvious? And supported by the specification. Pardon? And supported by the specification. Is it obvious? It's the age of the lawyer. Everything's obvious once you've already seen it. You can always look back and say something was obvious. But this machine, as claimed, has never been done before. There's never been a rowing machine that you pulled in a substantially linear motion. You're saying the examiner didn't do just a sloppy job of examining, but that this really was the best that was there? The Patent Office, in my view, is probably one of the single best agencies in the entire government. And I don't ever want to say that any examiner did a sloppy job. I would draw the line. You're off the hook. Okay. I don't have anything more. Hold on. The PPO explains that there was a fact-finding in the record that one could stand up and pull this in a rowing motion if the examiner found the factual matter. And even though you're telling us that your administrator says, no, it wouldn't work that way, we have to give substantial evidence to the fact-finding of what the reference discloses. Well, the reference doesn't disclose it. The Patent Office is just wrong. There is no place in this reference that you can stand up. This reference uses the word standing once. And it says you can stand to bend over  That's the only mention of the word standing in that reference. But in a simple mechanical invention, not meaning to disparage your client, but in a relatively straightforward mechanical invention where one can readily see since it's just a matter of simple pulleys how it operates, isn't it apparent just looking at the figure and couldn't the examiner therefore find as a matter of fact that you could also, just like you could push, you could stand up and pull? Only if... Let me mention on the inherency argument that you mentioned... No, this is not an inherency question. Isn't it fair for the examiner to look at this reference and say based on the ease with which I understand how it operates, you could just as easily stand in front of it and pull it as you can sit in it and push it? Why is the examiner not allowed to do that? Because he didn't take the entire reference into account. He's looking at one figure and he's saying I could stand there and pull this. Is that evidence? It seems like evidence to me, so why is it not? Not if you read the entire specification. And I have a written list here of evidence of how this cannot be used in a pulling motion. If you like the list, I'm happy to give it to you, but I realize... Is it contained in your brief? It's at pages A179-197, the patent itself. It's a specification of the prior art itself. I could just give you a citation list of all the places specifically in that specification that teach as a matter of evidence that it can't be used as a rowing machine. Okay, how about just give me one? Your best one. The one that teaches this can't be used as a rowing machine. Well, perhaps one of the best is... I mean, like I said before, there are 34 separate instances that talk about pushing, but one of the best, in my view... Well, no, talking about pushing is not saying you can't pull. You said there are explicit statements in the specification that says this can't be used as a rowing machine. Understood. Fair enough. Let me cite to you what I personally think is one of the best items of evidence, and that is... where it talks about... Column? Angling of the seat. Column 5 lines 29-33 and column 5 lines 47-60. What that says is that that seat is mounted at an angle, the backrest is mounted at an angle, and if that's true, if that seat is mounted and is purposely there to do that, and you do what the patent office says you're supposed to do, they say you're supposed to face this backwards, sit down on a slanted seat, let your crotch slide up to the back, and use the backrest as a chest pad, if you do that, your back is like this, your hands are like this, and you're pushing on anywhere from a 5 to 150 pound weight. Well, that's if you sit, but didn't they also find you could do it from standing? If you stand, as pictures in my brief show, you're standing here, pulling on a couple of handles that have a weight from 5 to 150 pounds on them, what's going to happen? You pull on those handles, you're going to go like this. Your handles are not going to move in a wrong motion. Your body's going to get pulled forward. But that's you telling me that? Well, that's them telling you that it can't. I'm telling you it can't based on the specifications. The difference is you're the lawyer. You can't introduce evidence. Your testimony about how you think it's going to work or not work is not actual evidence. In contrast, when the examiner makes a statement about what he understands the reference to disclose or to be obvious based on the reference, that's actually evidence. Now, if your inventor had come forward with a declaration and explained exactly what you just said, that would be evidence. But attorney argument is not evidence. You can't contradict them with argument. Respectfully, an examiner's statement that he thinks that something can be done without explaining how, that's not evidence. I don't find any authority, this court or anybody else, that says that an examiner's conclusion without an explanation is evidence. All right, thank you, Mr. Oliverio. Our final case this morning is sentenced